CLARENCE A. SHUNK, Plaintiff in Error, v. J. G. L.
        HARVEY et al., Receivers.

Division One, July 19, 1920.

1. **SUBMISSION OF ISSUE:** Wrongful Theory: No Evidence. Although
   the trial court may have refused to submit the jury the issue
   whether the ladder to the dump car from which plaintiff fell was
   a reasonably safe applicance, on the erroneous theory that plain-
   tiff had assumed the risk of using them in the condition in which
   they were, yet if there was no evidence that neither was not reason-
   ably safe, a judgment for defendant cannot be reversed because the
   court refused to submit the issue of a reasonably safe appliance.
   If no evidence is put in or offered which tends to support an is-
   sue, it would be error to submit it to the jury, and the reason for
   refusing to submit it is immaterial.

2. **NEGLIGENCE:** Proximate Cause. Negligence creates no liability
   for an injury not shown to have been caused thereby.

Appeal from Jackson Circuit Court.—*Hon. Thomas B
                Buckner,* Judge.

AFFIRMED.

*Wilkinson, Wilkinson & Dabbs* for appellant.

(1)   The trial court was in error in the alteration
by the court of plaintiff's Instruction No. 1, by running
the pen through those phrases of the instruction which
refer to the "platform," and the refusal to give the in-
struction as originally offered.   Patrum v. Railway Co.,
259 Mo. 124; Fish v. Railway Co., 263 Mo. 125; Williams
v. Pryor, 272 Mo. 613; Johnson v. Coal Co., 205 S. W.
615; Curtis v. McNair, 173 Mo. 270; Brady v. Railway
Co., 206 Mo. 509; Tinkler v. Railway Co., 212 Mo. 445;
Huston v. Railway Co., 129 Mo. App. 576.   (2)   The
trial court was in error in the alteration by the court of
plaintiff's Instruction No. 2, by running the pen through

those phrases of the instruction which referred to the "platform," and the refusal to give the instruction as originally offered. Same authorities as above. (3) The trial court was in error in the giving by the court at the request of the defendant of Instruction No. 8, which took away from the jury all questions of negligence in regard to the alteration or construction of the "Oliver air dump." Same authorities as above. (4) The trial court was in error in the exclusion of certain testimony in regard to negligence in the construction and alteration of the "platform" of the "Oliver air dump." Greenleaf on Evidence (15 Ed.), sec. 260-A. and note; Lee v. Railway Co., 195 Mo. 400.

*Cooper, Neel & Wright* for defendant in error.

(1) The trial court did not err in the corrections he made in plaintiff's instructions numbered 1 and 2, as offered. Glover v. Meinrath, 133 Mo. 303; Labbatt on Master and Servant (2 Ed.), p. 2500, sec. 931 et seq.; Winkler v. St. L. B. & B. Co., 137 Mo. 399; Hulett v. Railway Co., 67 Mo. 242; Bohn v. Railway Co., 106 Mo. 433; Smith v. Railway Co., 69 Mo. 35; Chrisner v. Bell Tel. Co., 194 Mo. 208, 209; Jackson v. Mo. Pac. Railway Co., 104 Mo. 457; Mathis v. Stock Yards Co., 185 Mo. 444. (2) The court would have been justified in refusing plaintiff's instruction numbered 1 as originally written, because it assumed controverted facts. (3) The trial court did not err in giving Instruction, 8, as requested by defendant. Same authorities above cited. (4) Under the testimony plaintiff was not entitled to recover in any event because he was guilty of contributory negligence. Same authorities above cited. (5) Under the testimony plaintiff was not entitled to recover in any event because he assumed the risk of any injury in doing what he did at the time and place complained of. Same authorities above cited.

GOODE, J.—This plaintiff lost his left foot in con-sequence of the wheels of a car passing over it—a car which belonged to the defendant, Kansas City, Clay County & St. Joseph Railway Company, but operated on the day of the accident, March 15, 1916, by the defend-antants J. G. L. Harvey and Ingraham D. Hook, as the receivers of said railway company. The receivers have since been discharged and the railway properties turned back to the company, which assumed all pending lia-bilities incurred while the property was in the hands of the receivers, whether contractual or in tort. Plaintiff was the conductor in charge of a construction train, con-sisting of an electric-motor car, or engine, a flat car, called a "ditcher," which carried a crane that raised and lowered a large scoop or shovel used to scrape up dirt, and a dump car, known as the Oliver Air Dump Car, into which, as we understand, the dirt was spilled. A platform extended across each end of the dump car, and possibly three feet below the top edge of the body of it, and about four feet and a half above the ground or railway track. This platform was a board, say three-quarters of an inch thick and a foot wide. From either end of it hung an iron ladder of two steps, of which the lower one was a little over two feet from the surface of the railway bed. The photographs which accompany the abstract of defendants show the arrangement of the dump car, the platform and ladders, and they are repro-duced to aid the reader to understand the facts of the case. According to the testimony the platform as con-structed, and as it was when the car was purchased by the railway company, extended out flush with the sides of the body of the dump car; but when the train was at work, the chain by which the shovel was lifted would catch upon the ladders as the shovel was hauled up by the crane, and to correct this interference, the railway company cut eight inches off each end of the platform, thereby bringing the ends of it and the ladders fastened

Shunk v. Harvey.

to the ends, inside the outer sides of the car. It is charged and contended that this alteration rendered the ladders unsafe appliances for the use of employees who might have occasion to mount them.

About 10:30 o'clock in the morning of March 15, 1916, the construction train and its crew were occupied on the part of the line of the defendant company north of Kansas City, known as "Rattlesnake Curve," which is described as a sharp curve, where a keen lookout for trains should be kept. A passenger train going north being about due at said hour, the construction train was run on a switch or siding to let the passenger train pass, and so was a car known as a "line car," used by employees called "linemen" and propelled by its own motor. After the passenger train had gone by, the "line car" left the siding first, moving northward onto the main track, and plaintiff went with it ahead of his own train, apparently to give signals to the latter train, so it would not run into the "line car." The plaintiff soon dismounted and stood by the track, to wait for the construction train which was six hundred yards behind. As it approached he signalled the engineer to slow down, the signal was obeyed, and the train drew up to plaintiff at the speed of about six miles an hour, the dump car in front, the "ditcher" next and the motor car pushing in the rear. Just as the ladder on the east side of the dump car was opposite plaintiff, who was standing on the ground east of the railway track, he took hold of the handhold and had placed his left foot on the lower rung or stirrup and had lifted his other foot off, or almost off, the ground, when a lurch of the car caused his left foot to slip off the stirrup and onto the rail below, where the wheels of the front truck of the dump car passed over it and crushed it so badly that amputation was necessary. It should be stated that the ladder from which plaintiff slipped had been bent in two inches or so at the bottom and hung that far out of a perpendicular line. We copy from the petition:

"Said defendants disregarding their duty, negligently and carelessly placed in the train on which plaintiff was engaged to perform services as such conductor, a dump car of the type above described, having an unsafe and defective running board and ladder, in this that said running board, instead of extending out almost even with the bed or box of the car as originally designed and constructed, had been altered by said defendants, their agents, servants and employees, by having been negligently and carelessly sawed off or cut off, so that said running board was several inches shorter than it was as originally constructed, and that this caused each end thereof to be set in about even with the front wheel of the nearest truck of said car; that said ladder was fastened onto the end of said running board, the ends of which running board had been negligently and carelessly altered and cut off by said defendants, their agents, servants or employees, until said ladder hung directly over and within a few inches of one of the wheels of said car; and further that the lower end of said ladder was negligently and carelessly allowed to become slanted and bent in toward said wheel so that its lower rung was by reason thereof several inches nearer said wheel than it should have been or would have been had it remained in the upright position it occupied as originally constructed; that said ladder was so placed and constructed and further had been allowed to become bent in so that a person who might attempt to mount the same would be liable to be thrown from the same onto the rails and under the wheels of said car and receive great injury; furthermore, that said ladder was unsafe and defective in that it was too short to permit a man of ordinary and usual height to stand up vertically thereon in any position and retain the handhold at the top thereof."

The charge is that the mishap to plaintiff was caused by these neglects of the defendants.

A general denial, a plea that plaintiff assumed the risk incident to using the ladder, and the plea that by his own carelessness he contributed to his injury, compose the answer.

A verdict was returned for the defendants, judgment was given upon it, plaintiff appealed, and assigns as errors the refusal of the court below to leave to the jury the issue of whether defendants were negligent in furnishing for plaintiff's use the dump car with its platform shortened so the ladders hung over the rails; and also that the court excluded competent evidence offered by plaintiff regarding the alteration of the car.

The question of whether the court erred in refusing to submit the proposition that defendants were negligent in having plaintiff use the dump car if the platform and ladder on it were not reasonably safe, is to be answered in the light of the facts as shown by the attendant physical conditions and the testimony. An expert witness expressed the opinion that a platform shortened to the length of the one on the dump car was less safe for use than a platform of the usual length. But the sole reason given for this opinion was that the short platform made it necessary for an employee in ascending the ladder, to go between the dump car and the one next to it. He said:

"Q. What was it you said about—if the length of these running boards was decreased by cutting off part of it, it would increase the danger—what was it you said? A. It would make it more dangerous for the car men to mount the car or to uncouple the car.

"Q. How much more dangerous? A. That is a hard question.

"Q. It would depend on how much was cut off? A. Yes, sir.

"Q. Always a certain amount of danger connected with catching a moving train, or jumping on the running board of any moving train or car, isn't there? A. Yes, sir.

"Q. And if a man had been working on one of these cars that had the running board shortened some, and had been using it, switching with it, and getting off and on for some length of time, would you say that was any more dangerous to him than a car would be with the running board extended out flush with the sides of the car? A. It would always be more dangerous, because it necessitates his getting more between the cars and therefore he would be more liable to miss his footing or handhold.

"Q. The danger from getting between the cars is the danger of being crushed by the cars coming together, is it not? A. Not so much. Of course there is one danger, but there is more danger of a man becoming tripped and falling upon the track, because he has to get further in and there is a larger part of the car projecting out to strike him.

"Q. If a man wants to swing on to one of these cars while in motion, even though the running board should be shortened a little bit, as suggested to you, it would not be necessary for that man to get in between the cars to swing on, would it? A. It depends on how much it is shortened.

Q. Suppose two or three inches? A. Of course it is just that much. It just makes it that much more dangerous; the further he had to go the more liable he is to be struck. . . .

· "Q. Which one of these steps would a man grab in stepping on one of these dump cars while in motion? A. He would probably make two grabs; one for the handhold on the end of the car, and the other probably for the one on the end of the platform, or side of the platform, but of course those things depend upon the man. . . .

"Q. If these platforms are shortened several inches, a man in making that grab would not have to get in between the dump cars, would he? His body would

still be on the outside? A. That depends on how much it is shortened, and his method of getting hold; but at the best, you can't stay far away."

Probably the opinion of the expert witness that the danger of an accident would be increased by the trainman being compelled to go between cars to climb the ladder, is, to some extent, correct. But that necessity did not exist when the plaintiff attempted to climb the ladder to the platform; for there was no car, at the time, in front of the dumper. The injury was due, proximately, to the slipping of plaintiff's foot in response to a swing of the car, a pure accident for which the company was in no way to blame, unless the bent condition of the ladder caused it.

It is said if the platform had been of the proper length, plaintiff's foot would have slipped to the ground instead of onto the rail. But this is speculative and a mere conjecture, not a fair inference from the evidence; for no one can conclude with any assurance where his foot would have lighted.

It is contended the lower court's refusal to refer to the jury the matter in question as ground for a verdict for plaintiff, was due to the opinion that plaintiff had assumed the risk of using the ladder and platform as they were, a fact which would not prevent him from recovering under the doctrine established in this State regarding the defense of assumption of the risk, if the ladder was not reasonably safe. Whatever reason the lower court may have had for not permitting the plaintiff to go to the jury upon the question of whether, in consequence of the shortening of the platform, the ladder was no longer a reasonably safe appliance, the ruling was correct; for no evidence was put in or offered that tended to prove it was more dangerous to use than a ladder suspended from a platform of the usual length would have been, except when to climb the ladder it was necessary to go between the cars.

Complaint is made of the exclusion of testimony to prove the ladder was less safe because of the shortening of the platform. A statement to that effect by the car expert, put on the stand by plaintiff, and the reason why it was less safe (namely, that a trainman would need to go between cars to ascend the ladder), was excluded when the witness was testifying in chief, but was admitted in the cross-examination, and we have copied it above.

It is so obvious from the evidence, including both the physical facts and the testimony of the only witness who touched upon the question, that the short platform was in no degree the proximate cause nor any cause of the injury to plaintiff, that the exclusion of evidence regarding the rules prescribed for dumper cars by the Master Car Builders Association, a group of master mechanics of some railroads, was not erroneous, even if it is allowed the testimony would have been competent in a case wherein the facts gave room for a fair inference that an accident was caused by a platform too short to be reasonably safe. Negligence creates no liability for an injury not shown to have been caused thereby. [Jackson v. Butler, 249 Mo. 342.]

The issue of whether the bent state of the ladder made it unsafe and caused the accident, was left to the jury under correct instructions, and found against the plaintiff.

The judgment must be affirmed, and it is so ordered. All concur, except *Woodson, J.,* absent.