WILSON ROSE, a Minor, by FLOYD T. ROSE, his next friend, v. GUY A. THOMPSON, Trustee in Bankruptcy for the Missouri Pacific Railroad Company, a Corporation, Appellant.—141 S. W. (2d) 824.

Division One, June 28, 1940.

*D. I. Ragsdale* and *Thomas J. Cole* for appellant.

*Richard T. Brownrigg* and *Charles P. Muldoon* for respondent; *William H. Tombrink* of counsel.

DALTON, C.—This is an action for $25,000 damages on account of severe personal injuries suffered by plaintiff when the stalled automobile in which he was seated was struck by one of defendant's trains. After a jury returned a verdict for defendant, plaintiff moved for a new trial, the motion was sustained, and defendant appealed.

The petition alleged that plaintiff "was a passenger in and was seated in an automobile which was standing stalled on one of the tracks of the defendant at the intersection of said track with Geyer Road" in Kirkwood, Missouri, and that the automobile was struck by defendant's train, and plaintiff injured. The negligence charged was (1) failure to give the statutory signals to warn plaintiff of the approach of the train in time for him to get out of said automobile and reach a place of safety before the engine struck the automobile; and (2) negligence under the humanitarian doctrine (a) in failing to give a timely warning of the approach of the train and (b) in failing to check the speed of the train, "when by doing said things they could have avoided striking the automobile before plaintiff could reach a place of safety which he could have done but for defendant's said negligence and could have prevented plaintiff from being injured." The answer was a general denial and a plea of contributory negligence.

The cause was submitted upon primary negligence and upon negligence under the humanitarian doctrine, as above stated, and a verdict returned for defendant. The motion for a new trial was sustained by the court (1) upon the first specification of the motion, to-wit; "Because the verdict is against the evidence and the weight of the evidence and the law under the evidence, and was the result of bias and prejudice on the part of the jury," and (2) because of error in the giving of instructions 8, 9, and 10 requested by defendant.

Appellant assigns error upon the court's action in sustaining the motion for a new trial. Appellant contends that the demurrer to the evidence at the close of the whole case should have been sustained and, therefore, that the court may not grant a new trial on the ground that the verdict is against the weight of the evidence; that the

negligence, if any, of defendant was not the proximate cause of plaintiff's injuries; that the verdict was not against the weight of the evidence; that the court abused its discretion in granting the motion on said ground; and that the said instructions correctly declare the law.

A statement of the evidence is required. For convenience we shall refer to the parties as plaintiff and defendant. Plaintiff was employed in construction work at a place about two miles north of the point where defendant's east and west tracks cross Geyer Road in the City of Kirkwood, Missouri. He quit work about 2 p. m. July 7, 1936, and secured a ride in the direction of his home in an automobile owned and operated by a fellow workman, one Polys. The automobile was a 1930 model A Ford roadster. Polys sat on the left, driving; plaintiff sat on the right; and one Lawler in the center. They entered Geyer Road six or eight blocks north of defendant's crossing and drove south.

Plaintiff and Polys were both familiar with the crossing in question and knew they were approaching it. Plaintiff had crossed this crossing twice a day for some five or six weeks. On this occasion he was tired and was resting his head in his hands. He was not looking in any direction; he wasn't paying any attention, and didn't know just where he was. As the automobile approached defendant's crossing, Polys was driving 10 to 15 miles per hour. When Polys was 400 to 700 feet north of the crossing, he saw defendant's train 600 to 700 feet from Geyer Road, as it approached the crossing from the east. It was a long train (defendant's evidence showed 80 to 85 cars), and was traveling "4 or 5 miles an hour. It could be ten miles an hour. . . . It was a little slower than that." The flashing light signals at the crossing were operating. He heard a bell, which he said was in the flashing light signals, and which he testified he knew meant that the train was coming (other witnesses for plaintiff and witnesses for defendant testified that there was no bell in the flashing light signals). He brought his car to a dead stop in the shade of some trees, less than 50 feet back from the tracks at a sign reading, "Stop. Railroad Crossing." The train was then 400 to 500 feet away and he could see it plainly. Lawler had also seen the train as it approached "a good block to the east." Polys then started his car and attempted to cross in front of the train. He said he thought the train was going to stop, it seemed like the steam was shut off, and he wanted to get home. As he started over the crossing in front of the train, the engine of his automobile stalled. He tried two or three times to pull the automobile across with the starter, but could not. The automobile coasted to a stop against the south rail of the track, and as it did so, he shouted to the others to jump, saying, "She is going to get us." When the automobile stalled on the track, according to Polys, plaintiff's only witness on the matter, the en-

gine of the train was perhaps 200 feet away, it might have been 50 or 100 feet, or 100 to 200 feet, but pretty close. It was 50 to 100 feet away when Polys attempted to leave the car.

The crossing was a little rough, and when the automobile hit the rails, it was "bouncy," and plaintiff looked up and knew that he was on the tracks. Plaintiff testified that when he looked up the engine had stalled and the automobile was coasting; that "the rails stopped it;" that after the car stalled Polys told them to get out "a train was coming;" and that he had not heard the train until Polys said to get out.

As the men started to get out of the automobile, the doors on each side jammed. Polys got up in the seat of the automobile, and as the train hit, he jumped out over the door and on to "the cow-catcher" or pilot of the engine. He then walked back on the running board on the fireman's side of the engine. As he started to go in the window of the cab, he felt the brakes taking hold, and the train began to slow down. The front end of the engine was 200 to 300 feet west of the west line of Geyer Road when the train was brought to a stop, and the engine moved 250 to 300 feet while he was on it.

While Polys was trying to get out on the left side of the automobile, plaintiff and Lawler were trying to get out of the right door. The door jammed and could not be opened. Plaintiff then pulled back the lever, and Lawler kicked the door open with his foot, and got out ahead of plaintiff. Plaintiff said that he stayed back to let Lawler out. Before plaintiff could jump the crash occurred. The engine struck the automobile between the left door and left rear wheel and carried it, and pushed it west, on the pilot of the engine.

Polys received a bump on the head, a skull cut, a sprained elbow, and had to be put to bed later. Four stitches were taken in his head. He was laid up a couple of weeks. Lawler suffered shock, a strained back, and was laid up a week from his work. Plaintiff in some manner rolled or fell under the train and was more severely injured. He lost his right foot, four and one-half inches above the ankle, and a part of his left foot.

Polys testified that there was no train bell ringing; that he heard no train bell or whistle before or after the accident; and that while he was walking back on the runway on the side of the engine the bell was not ringing. Plaintiff didn't hear any bell or whistle and since he didn't hear the bell he "would say it wasn't ringing." Lawler (defendant's witness) didn't remember whether he heard the train bell ringing or not and didn't know whether a bell was rung or a whistle blown.

A number of witnesses for plaintiff testified that the bell was not rung, or the whistle blown for the crossing; and that they did not hear any bell or whistle before or after the collision. Some of these witnesses were materially discredited on cross-examination, others

were impeached by prior written statements, were discredited by other testimony of plaintiff's witnesses, or were shown not to have been in a position to hear the signals if they were given. For example, three of such witnesses were in a service car with three other persons at the time of the accident. The car was traveling twenty-five to thirty-five miles per hour. When the car turned into Geyer Road and toward the crossing at a point some four blocks from the scene of the wreck, the train was already on the crossing, the crossing was blocked, and the train coming to a stop. These witnesses were certain that no bell was rung or whistle blown 80 rods east of the crossing or between that point and the crossing, but they had not had their attention called to the train in any manner until they turned into Geyer Road.

Defendant's evidence tended to show that, as the train approached the crossing, it was traveling downgrade at from 10 to 12 miles per hour; that the whistle was blown for the crossing and the bell rung; that the bell continued to ring to the crossing and after the collision until it was turned off; that, when the engineer first observed the automobile, it was about 60 feet from the front of the engine; that it came from behind some shrubbery on the right side and started over the crossing; that the engineer noticed something wrong with it, as it seemed to be limping and jumping "right at the track;" that as the automobile disappeared from view behind that part of the engine which extends 68 feet in front of the engineer's position, the engineer called to the fireman, "Did the car get over;" that as the fireman said, "No," the engineer applied the brakes in emergency; that the engine hit the automobile; that, when the air went on, the fireman could see the automobile on the pilot of the engine, a part of it being visible at the left side of the engine; and that the train came to a stop with only the engine and two to four cars over the crossing. Other witnesses said that the engine traveled three or four car lengths beyond Geyer Road before the train came to a stop, and that after the crossing was cut the engine was four or five car lengths west of Geyer Road. The length of the average car was said to be 30 feet. There was no evidence as to the width of Geyer Road. All distances testified to were estimates. No measurements were made.

Defendant's freight conductor, on cross-examination, stated that he judged the train at 10 to 12 miles per hour would run four or five car lengths after the brakes came on. Defendant's engineer, on cross-examination, stated that when the brakes were applied in emergency, and began to take effect, that the train slowed down gradually until a stop was effected; that motion was gradually retarded; that it took a certain distance within which to stop; how much, in view of the particular train, he could not say; that he couldn't say to what extent the train was slowed down within the 60 feet; but that he assumed there was some slowing down. There was also evidence that

the engineer could see both rails at a distance of 200 feet in front of the engine, although the front of the engine would cut off the view to the left as the train moved forward.

Trial courts have wide discretion in passing on motions for a new trial where there is error in the record but the power of the court to grant a new trial is discretionary only as to questions of fact and matters affecting the determination of issues of fact. [Schipper v. Brashear Truck Co. (Mo.), 132 S. W. (2d) 993, 995; Loftus v. Metropolitan Street Railway Company, 220 Mo. 470, 481, 119 S. W. 942.] But a trial court in the exercise of its discretion must act upon reasonable grounds and not arbitrarily. The discretion vested in the trial court is a sound discretion. This discretion extends to the granting of a new trial on the ground that the verdict is against the weight of the evidence. [Gottschalk v. Wells (Mo.), 274 S. W. 399, 401; Forbis v. Hessing, 328 Mo. 699, 41 S. W. (2d) 378, 380.] Of course, the discretion so vested may not be abused or exercised in an arbitrary and unreasonable manner.

In the case under consideration, if no submissible case was made for the jury, that is, if defendant's demurrer to the evidence should have been sustained as a matter of law at the close of the whole case, then to grant a new trial to plaintiff after a verdict for defendant would be arbitrary and an abuse of the trial court's discretion. [Lindsey v. Vance, 337 Mo. 1111, 88 S. W. (2d) 150, 151.]

In the case of Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297, 300, this court said, "To grant a new trial, on the ground that the finding was against the weight of the evidence, would be arbitrary if there was no evidence to weigh. Therefore, on appeal from such an order based on that ground, the appellate court will determine whether or not there was sufficient substantial evidence to sustain a verdict for the party to whom the new trial was granted." (Citing cases.)

In the case of Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43, 44, this court said, "Plaintiff has no right to a new trial when the evidence in her favor is not sufficient to take the case to the jury. It is much the same question as is presented on a demurrer to the evidence, and, if such a demurrer should have been granted, no new trial can be granted on this or any other ground. A failure of evidence to support a verdict for plaintiff renders a case dead, and it cannot be resurrected by a motion for new trial. Whether it is in that condition is a question for this court."

If on the whole record in this cause, considering the evidence most favorable to plaintiff, and all reasonable inferences to be drawn therefrom, no submissible case was made for the jury, then the motion for a new trial should not have been sustained, and, in such case, it is unnecessary to determine whether or not the instructions given on behalf of defendant correctly declared the law. In view of

all the evidence, it is apparent that plaintiff produced substantial evidence to the effect that no warning of any kind was given. An issue of fact was presented as to whether or not any statutory or other signals were given by defendant's train prior to the instant of impact. The weight and value of the evidence on that issue, and the credibility of the witnesses, was for the jury, if a submissible case was otherwise made by plaintiff. However, the essential issue in this case turns upon the matter of proximate cause. A negligent act creates no liability for an injury not shown to have been caused thereby. [Shunk v. Harvey, 284 Mo. ·343, 223 S. W. 1066, 1068.] Plaintiff may not recover on account of alleged acts of negligence by the defendant which are not shown to be a proximate cause of plaintiff's injuries. [Borack v. Mosler Safe Co., 288 Mo. 83, 231 S. W. 623, 624; Crone v. United Railways Company of St. Louis (Mo.), 236 S. W. 654, 656.]

▓ "The mere fact that injury follows negligence does not necessarily create liability. The burden of establishing by substantial evidence appellants' negligence as charged and the necessary causal connection between such negligence and the injury alleged rested upon respondent. And, if the evidence merely established that the injury might have resulted from several causes for some but not all of which appellants were liable, the necessary causal connection remained in the realm of conjecture and speculation and respondent's case failed." [Pedigo v. Roseberry, 340 Mo. 724, 102 S. W. (2d) 600, 608.] (Citing cases.) There must be substantial evidence that the negligence for which defendant was responsible caused or contributed to plaintiff's injuries as a direct and proximate cause thereof before a case is made for the jury. [Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S. W. (2d) 702, 705.] "The test of whether there is a causal connection between the alleged negligence and the injury is that the facts show that, absent the negligent act, the injury would not have occurred." [Kimberling v. Wabash Railway Company, 337 Mo. 702, 85 S. W. (2d) 736, 741.] (Citing cases.) [Coble v. St. Louis-San Francisco Railway Company (Mo.), 38 S. W. (2d) 1031, 1036.] (Citing cases.) The burden of proof, therefore, rested upon plaintiff, not only to show the fact of the negligence averred, but also to show a direct connection between such negligence and the plaintiff's injuries.

▓ Was there substantial evidence that a failure to warn, either as provided by the statute, or under the humanitarian doctrine, was a proximate cause of plaintiff's injuries? It is apparent from the petition that the entire charge of negligence is based upon facts occurring subsequent to the time the automobile came to a stop upon defendant's tracks. The petition alleges that, "Plaintiff . . . was a passenger in and was seated in an automobile which was standing stalled on one of the tracks of the defendant." Primary negligence in failing· to give the statutory signals, and negligence under the

humanitarian doctrine, was then pleaded as the cause of plaintiff's injuries. The petition, and plaintiff's instructions submitting primary negligence (failure to give signals as required by statute) and humanitarian negligence (in failing to warn and failing to check the speed of the train), make no mention of how or when the automobile in which plaintiff was seated became stalled. The petition, and said instructions, deal with the automobile as standing stalled upon defendant's tracks, and said instructions require no findings of fact as to when or how said automobile became stalled upon said tracks, or as to how long it had been there, or as to where it came from. There is an instruction, however, that, if plaintiff was riding as a guest of Polys, he was not chargeable with any negligence of Polys, and that if plaintiff acted as a reasonably prudent person he was not guilty of negligence.

Plaintiff admitted that he knew when the automobile in which he was riding hit the rails at the crossing and that he then knew where he was. He knew when the engine of the automobile stalled. He knew when the automobile was coasting to a stop, and when it stopped against the far rail. As to what occurred thereafter plaintiff testified: "The next thing, Mr. Polys tried to start the car and he didn't succeed, so he told us to get out, the train was coming." Plaintiff said his attention was first attracted to the train when Polys said, "A train is coming." Neither Polys, who saw the train 400 to 700 feet away and who, after coming to a dead stop, attempted to drive the automobile across in front of the train, nor Lawler, who saw the train more than a block away and watched its approach, were able to escape from the automobile without injury before the collision occurred. Both were in the same seat with plaintiff. We think the undisputed physical facts, therefore, indicate that only a very brief period of time elapsed between the time when the automobile came to rest against the south rail and the moment of impact. The two occupants of the automobile, who saw the train bearing down upon them, were not able to escape without injury. It would be mere speculation and guess to say that if any signals had been given, or that, if plaintiff had heard a signal given by defendant's train, he would have been able to escape from the stalled automobile and without being injured. In addition, plaintiff knew where he was before the automobile came to a stop against the rail, and he was promptly advised of the approach of the train. If plaintiff knew of the approach of the train by the time the automobile came to a stop, he was not oblivious, and defendant's failure, if any, to warn after the automobile had stalled on the track was not the proximate cause of plaintiff's injuries. A warning could serve no purpose after plaintiff knew of the near approach of the train. [Pentecost v. St. Louis Merchant's Bridge Terminal Railroad Co., 334 Mo. 572, 66 S. W. (2d) 533, 535.]

Plaintiff's injuries were solely due to the negligence of Polys in

starting his automobile and attempting to beat the train across, to the stalling of the engine of the automobile upon the crossing, to the jamming of the automobile doors, and to the escape of Lawler out through the right door ahead of plaintiff. We think the evidence is insufficient to make a submissible case upon the issue that defendant's failure to give signals required by the statute, or to give signals under the humanitarian doctrine, was a proximate cause of plaintiff's injuries. The evidence offered by plaintiff on this issue amounts to nothing more than speculation, guess and uncertainty.

The evidence with reference to defendant's ability to slacken the speed of the train after the automobile stalled upon the tracks is, likewise, insufficient to make a submissible case. The testimony of Polys as to the speed of the train, and as to its distance from the stalled automobile was too general, indefinite and uncertain, in view of the conceded facts, to support a finding for plaintiff on the theory that the train could have been slowed enough for plaintiff to have escaped from the automobile and avoided injury. It did not, standing alone, constitute substantial evidence of facts necessary to support a verdict for plaintiff on that issue, nor was it accompanied by sufficient other evidence. There was no evidence as to the time (in seconds) that would be required for the engineer to apply the brakes in emergency, nor as to the time which would have to elapse before the brakes would take hold and become effective to slacken the speed of the train, nor as to the distance the train would have traveled in such period. The distance in which the particular train could have been stopped, the distance within which it was actually stopped after the brakes were applied in emergency, the extent to which the train might have been delayed in reaching the stalled automobile, the time necessary for plaintiff to have escaped from the automobile, all remain so uncertain upon the whole evidence that a determination of the question of whether defendant's negligence contributed as a direct and proximate cause of plaintiff's injuries is a matter of guess, speculation and conjecture. [Knight v. Wabash Ry. Co. (Mo.), 85 S. W. (2d) 392, 399.]

Respondent relies on the case of Alexander v. St. Louis-San Francisco Ry. Co., 327 Mo. 1012, 38 S. W. (2d) 1023. In that case the testimony tended to show that appellant's train was running at a rate of from 40 to 45 miles an hour and that respondent's truck was traveling over a crossing at 3 miles per hour. The truck could have been seen from the train for a distance of over 600 feet from the crossing, and when the "train was at a distance of from 365 to 435 feet from the crossing, . . . it might be said to have become apparent to a prudent engineer in the exercise of the care commensurate with his duty both to his passengers and to travelers upon a public street crossing the railroad track in a populous city, that respondent was in a position of peril." The overhang of the train struck the extreme

rear end of the truck before the truck had finally cleared the crossing. The court said: "The testimony warrants the conclusion that, had the engineer gone into emergency promptly at the time when, by the exercise of ordinary care, he should have discovered respondent in a perilous position, the train then being some 365 to 435 feet from the point of impact, and allowing some 3 to 4 seconds for the emergency operation, there would have been a distance of from 190 to 200 feet to the point of impact during which the speed of the train would have been appreciably and to some extent slackened. It is evident that a slight slackening in the speed of the train would have enabled respondent to have cleared the track in safety. The difference of a fraction of a second in time and a few feet in distance would have averted the collision." In that case the distances were measured, and the evidence substantial that a mere fraction of a second of delay in the movement of the train would have averted the collision. The same circumstances do not exist in this case, where there is mere conjecture or guess that plaintiff might have escaped injury.

We hold that there was no evidence tending, with any degree of certainty whatever, to show that plaintiff could have escaped from the automobile within the period of time that said train might have been delayed in reaching the location of said automobile, or that the injury to plaintiff might have been avoided by the giving of any signals after the automobile became stalled upon defendant's tracks. The trial court therefore erred in setting aside the verdict as being against the weight of the evidence; and it is immaterial, under the circumstances, whether or not defendant's instructions correctly declared the law.

The order granting a new trial is reversed and the cause remanded with directions to the trial court to reinstate the verdict of the jury and to enter judgment thereon for defendant. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.