MRS. JOSEPH H. PAYNE v. W. D. REED, Appellant.—59 S. W. (2d) 43.

Division One, March 16, 1933.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau, Winston H. Woodson* and *Sam D. Parker* for appellant.

*Calvin, Vandeventer & Kimbrell* for respondent.

346

STURGIS, C.—Plaintiff, as surviving widow of Joseph H. Payne, deceased, brings this action to recover damages on account of the death of her said husband by reason of the alleged negligence of defendant, W. D. Reed. The death of Joseph H. Payne is alleged to have been caused by his being struck and fatally injured by an automobile being driven by defendant. The defendant is charged with negligence in driving and operating the automobile in question. The case was tried to a jury, resulting in a verdict for defendant. A motion for new trial was thereupon filed by plaintiff and the court sustained same on two of the numerous grounds assigned, to-wit, that the verdict is against the weight of the evidence, and that the court erred in giving a certain withdrawal instruction to be noted later.

The principal question is whether there is substantial evidence of defendant's negligence as a producing cause of the accident in question, sufficient to take that question to the jury. Both parties seem to agree on the proposition that if there is substantial evidence in plaintiff's favor to take the question of defendant's negligence to the jury, then this court will not interfere with the right of the trial court to weigh the evidence *pro* and *con* and grant a rehearing

on the ground that the verdict is against the weight of the evidence. In their respective briefs the plaintiff stresses the affirmative part of this proposition, to-wit, that this court will not interfere with the discretion of the trial court in granting a new trial when it deems the verdict against the weight of the evidence, but concedes that this discretion is limited to cases where there is substantial evidence to sustain the verdict. The defendant stresses the negative part of the proposition, to-wit, that the trial court has no right to grant a new trial where there is no substantial evidence in plaintiff's favor to take the case to the jury. Both parties are right as to the law, as shown by the numerous authorities cited. For plaintiff we may mention Johnson v. Bray (Mo.), 31 S. W. (2d) 998; First National Bank v. Dunbar (Mo. App.), 31 S. W. (2d) 257; Hunt v. Gillerman Iron & Metal Co., 327 Mo. 887, 39 S. W. (2d) 369. And for defendant, Borack v. Mosler Safe Co., 288 Mo. 83, 231 S. W. 623; Lyons v. Corder, 253 Mo. 539, 162 S. W. 606; Gray v. City of Hannibal (Mo.), 29 S. W. (2d) 710; Sutter v. Metropolitan Street Ry. (Mo.), 188 S. W. 65. The proposition is really a simple one and the cases are not in conflict. ■ The granting of a new trial because the verdict is against the weight of the evidence rests on the proposition that the court has weighed the evidence in the judicial balance and found the greater weight or preponderance of same against the jury's verdict. But this, in turn, is based on the proposition that there is evidence both *pro* and *con* to be weighed—that there is substantial evidence at each end of the balance to be weighed one against the other. If there is, it is the exclusive province of the trial court to do the weighing and its decision as to which is the heavier is final. But, on the other hand, it is the province of this court to determine on appeal here whether there is any substantial evidence in plaintiff's favor—in plaintiff's end of the balancing scales—the verdict being for defendant. If not, there is nothing for the trial court to weigh and it has no right to say that the weight of the evidence is against the verdict. In other words, plaintiff has no right to a new trial when the evidence in her favor is not sufficient to take the case to the jury. It is much the same question as is presented on a demurrer to the evidence, and if such a demurrer should have been granted, no new trial can be granted on this or any other ground. A failure of evidence to support a verdict for plaintiff renders a case dead and it cannot be resurrected by a motion for new trial. Whether it is in that condition is a question for this court.

This calls for a consideration of the evidence as supporting a case for plaintiff. The accident causing plaintiff's husband's death occurred at the intersection of Thirty-six Street, an east and west street, and Central Street, a north and south street, in Kansas City, Missouri. Not much is known about the movement of the deceased, Joseph H. Payne, except that he was walking. Main Street is a

north and south street a few blocks east of Central, and Broadway is the next street west. The east and west streets are numbered going south, so that Thirty-fifth Street is north and Thirty-Seventh Street is south of Thirty-sixth Street. Thirty-sixth Street, therefore, crosses Central, the place of the accident, at right angles and is a much used street, forty-four feet wide from curb to curb. Central Street is twenty-six feet wide from curb to curb. At the time of the accident defendant was driving a Cadillac automobile and had come down Main Street, turned west on Thirty-sixth Street, and was driving west along the north side of Thirty-sixth Street till he reached and was crossing Central Street when his car collided with the deceased, inflicting fatal injuries.

The petition charges negligence of the defendant in (1) driving his automobile at high, dangerous, reckless, and unlawful rate of speed; (2) in failing to exercise the highest degree of care in maintaining a constant and vigilant lookout for pedestrians crossing the street intersection; and (3) in negligently failing to stop his automobile, check its speed, or divert its course after he saw, or with due care could have seen, the deceased crossing this street intersection and in peril, in time to have done so and to have averted striking him. This last charge is a violation of the so-called humanitarian rule.

After all the evidence was in the court refused a demurrer offered by defendant. It also refused a withdrawal instruction on the humanitarian doctrine, as also the violation of duty to maintain a vigilant lookout for pedestrians. The court gave an instruction withdrawing from the jury's consideration the charge of driving at a reckless and dangerous rate of speed. This is the instruction which the court later concluded was wrong. The court then submitted the case on the humanitarian doctrine only by an instruction not criticised if there is evidence to support the same. The court also instructed generally that it was defendant's duty to exercise the highest degree of care in operating his automobile and to operate same at a rate of speed so as not to endanger the property, life and limb of another, but without authorizing a verdict for negligence in this respect. Under these instructions and some others given for defendant, the jury found a verdict for defendant. Thereupon the court granted, as we have said, a new trial on the ground that the verdict is against the weight of the evidence, and defendant's appeal therefrom presents the same question as would be presented by having sustained a demurrer to the evidence.

█ █ Let us consider then whether the evidence is sufficient to show a violation of defendant's duty under the humanitarian rule, which, regardless of any negligence of the deceased in going into peril (which is not claimed), or any antecedent negligence of defendant in causing the peril, seizes on the conditions as they are and requires the defendant driving an automobile, after he discovers, or by the

exercise of the highest degree of care could have discovered, the person in peril, to use all the means available to avoid striking him, either by stopping his car or lowering its speed, changing its course, or sounding an alarm. In this case no negligence of the deceased in going into peril is charged or proven, though that is not material in considering defendant's negligence. All that is shown is that the deceased left his home on the east side of Central Street just south of Thirty-sixth Street a short time before the accident to attend an errand for his wife on Broadway, the next street west, and he was doubtless returning home by walking east along the north sidewalk of Thirty-sixth Street to this intersection and then attempting to cross same. Defendant says he was driving west on Thirty-sixth Street and as he approached this intersection with Central Street, it being quite dark and about six o'clock P. M., November 14, 1927, he slowed down to about ten miles per hour, looked both ways and saw no one moving, sounded his horn, and proceeded straight across Central Street, and did not know just what had happened till he stopped just west of Central Street and discovered the deceased's body lying on the pavement in front of his car.

There is much conflict as to the question of light at this crossing, and as no one saw the car strike deceased, defendant now insists that there is no direct and positive evidence that his automobile struck the deceased, and that such fact is only an inference from the other facts, though a fair inference, and consequently no further inference can be founded on or drawn from that inference without violating the rule that inferences cannot rest on inferences. Attending to this contention, we find that defendant gave his evidence as to what occurred at a coroner's inquest held just after the accident and this was put in evidence as an admission against interest. Defendant then testified:

"*I was driving this automobile which struck this man Payne.* I came down Main Street and turned west on Thirty-sixth Street and when I came to the intersection of Central Street I struck something that I presumed to be a man-hole cover and it didn't make much of an impact. I didn't give it a thought and intended to drive on. I had the windshield up so I could see as plainly as I could and *I saw something go by the windshield on the right-hand side of the car.* I thought I would stop as my car wasn't going very fast as I expected to park along the Hyde Park Hotel (a few doors west). I got out on the left side of my car and went around to the back of the car to see if I hit something and I saw a hat—it was a stiff hat—which I picked up. That very naturally disturbed me and I looked under the car and didn't see anything till I walked around in front of the car and saw this man. The point where I first felt the impact was just north of the center of the intersection in the line of my driving. Where I stopped the car I had just cleared this intersection

and the rear end of the car was two or three feet past the west line of Central Street. With reference to my car, Mr. Payne (deceased) was lying about—just like he had fallen off—directly in front like he had fallen off the bumper. He was lying about fifteen to twenty feet from the west curb line of Central Street and about thirty feet from the point I felt the impact. He was lying about twenty feet south of the north curb of Thirty-sixth Street. I was driving my car north of the center line of Thirty-sixth Street and he was the width of the car practically from the center line. I did not see anything at all till I saw an object go by my windshield. I haven't the least idea what the object was, but it must have been his hat. My lights were burning. It was very dark at that corner. It was drizzling rain, but not enough to affect my vision ahead. I was looking directly west through the windshield. I slowed up as I neared the intersection of Central Street and looked to the right and to the left. There was no moving car in sight or any person that I could see. The only idea I have as to what part of my car struck Mr. Payne is by the way things were, and I would say that in my judgment the *right-hand side of the fender struck him*. As to how far I carried him, I think he just laid over on the fender and when I stopped the car he just fell off. That is my judgment about it. When I saw him lying in front of the car it was very dark. I backed the car three or five feet so I could see and I saw he was badly injured and then went up the street and called a doctor and ambulance. Under the conditions there and my rate of speed, I could have stopped this car in five or ten feet. I did not see this man till I got out of my car.''

A witness who was nearby said his attention was attracted by the impact, which he described as like striking a bag of sand, and when he looked he saw no cars together but saw the car stopped just beyond the intersection, and a man (defendant) got out and picked up the hat at the rear of the car, then looked in front of the car and left in a run. This witness then went to the car and saw the deceased lying in front of the car some five or six feet in a badly injured condition. The deceased was removed to a hospital and died in a short time. The post-mortem examination showed he had received these injuries: ''Fracture second and eighth ribs, left side; puncture lower lobe of lung, left side; bruises both lower legs, bruise over left thigh; lacerations left side of scalp—posteriorly.''

From a reading of this evidence we cannot agree with defendant's contention that there is no direct and positive evidence that deceased was struck by defendant's car and injured that way, and that such fact is established only by mere inferences from other facts. If such fact is established by inference only, defendant, who knew the facts, drew the inference himself. A fact may be proven by circumstantial evidence as well as direct evidence, and it cannot even be said that

the proof here was by circumstantial evidence only. The defendant admitted it.

We think the evidence supports a finding that at the time defendant's car struck the deceased he was at a point near the center of Central Street and in the line of travel of defendant's car just north of the center line of Thirty-six Street and some twenty feet south of the north line of Thirty-sixth Street. He was at least twenty-five or thirty feet from the nearest curb—the northwest corner of Thirty-sixth and Central Streets. After the first impact his body was carried directly west some thirty feet and deposited some twenty feet south of the north curb of Thirty-sixth Street. The fact that plaintiff's injuries were on the left side of his body, the car coming from the east, indicates that the deceased was facing toward the south or southeast when struck, and that was toward his home on the east side of Central Street just south of Thirty-sixth Street.

As to light and darkness at the scene of the accident, the same occurred near six o'clock P. M., November 14th, when it would naturally be dark, and it was cloudy if not drizzling rain. The defendant does not claim any defect in the headlights of his car and says that same were burning. The most he claims is that the deceased suddenly stepped from the darkness not covered by the spread of his headlights into the path of his car, there being no street light burning at this street intersection at the time. However, while this question of the street light being burning at the time is sharply controverted, plaintiff's evidence, mostly from those in charge and operating the lights, strongly tends to show that the street light was burning at the time and lighting up the whole scene of the accident. If the jury believed plaintiff's evidence, there would be little difference as to the accident occurring at night or in the daytime.

We think that under this evidence and the reasonable inferences therefrom when taken most strongly for plaintiff, a jury would be justified in finding all the facts essential to defendant's liability under the humanitarian rule. The deceased was quite an old man and there is no reason to infer that he was proceeding across the intersection of these streets other than in a deliberate manner, giving heed to the wet and slippery condition of the street and protecting his face somewhat from the drizzling rain. His injuries and all the facts tend to show that he was struck while in an upright position and struck with considerable force and carried at least thirty feet. The deceased was in the open at least from the time he left the curb. Defendant was in no way relying on deceased stopping or changing his course before he entered on the pathway of the car. To see him at all was to see him in peril, and the jury might well find that the opportunity to see him was present. The only dispute is that there was no light, and as to that the evidence was conflicting and the trial judge thought the preponderance was in plaintiff's favor. The defendant could have

stopped his car in five to ten feet and checked its speed or changed its course in less space than that. The jury could well find that defendant was negligent in not using the highest degree of care in discovering the deceased and avoiding striking him.

We also think that the trial court erred, as he later held, in giving Instruction No. 7 for defendant, which told the jury that plaintiff was not entitled to recover on the ground of defendant's negligence in driving at a high and dangerous speed. Defendant said he was driving at ten miles per hour, but when we consider the fact that there was a distinct and perceptible impact, which was so plain that the witness, who was on the east side of Central Street two or three doors north of Thirty-sixth Street, said the impact attracted his attention and sounded like striking a sand bag, and he thought there was a collision till he saw that no two cars were together; and the fact that deceased's hat blew off when he was struck and went past the windshield, and the very severe and violent injuries received by deceased by the impact, such might well warrant an inference of a higher rate of speed.

It is pointed out by plaintiff that the defendant convicted himself of negligence, or at least left it a question for the jury, when he testified that he proceeded across the intersection at ten miles per hour, when he knew, as he said, it was very dark, with no street light burning, and knew he was unable to see persons traveling across the intersection. There are cases justifying a finding of negligence under such facts. In Solomon v. Duncan, 194 Mo. App. 517, 185 S. W. 1141, this is said: "If, as plaintiff says, he could not distinctly see an object of the character here in question ten feet in front of his machine, because of weather conditions, and he nevertheless was driving his automobile at such a rate of speed as to make it impossible to stop, with the appliances at hand, within such distance as he could discern such an object, then we think that he was plainly guilty of contributory negligence barring a recovery. If the night was misty or foggy, and the street wet and slippery, all the more care was needed on his part. What is ordinary care will depend, of course, upon all the facts and circumstances of the case. And the law required that plaintiff exercise such care as an ordinarily prudent man would have exercised under the circumstances." Other cases are to the same effect. [Fisher v. O'Brien, 99 Kan. 621, 162 Pac. 317, L. R. A. 1917F, 610; Lauson v. Fond du Lac, 141 Wis. 57, 25 L. R. A. (N. S.) 40.] The requirement of our statute is that the driver of an automobile "shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another, or the life or limb of any person." [Sec. 7775, R. S. 1929.]

The proof of negligence as to the rate of speed under the existing conditions does not, however, aid plaintiff in sustaining the

submission of the case on the humanitarian theory, as plaintiff urges. Such evidence may show negligence in other respects, but, being antecedent negligence, defeats rather than aids plaintiff on the humanitarian theory. That defendant was going at such a high rate of speed, though itself unlawful, as to prevent his avoiding the injury after the peril is discovered, or should be discovered, does not make a case under the humanitarian theory. [State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. (2d) 798; Alexander v. Railroad, 327 Mo. 1012, 38 S. W. (2d) 1023.]

This withdrawal Instruction No. 7, which tells the jury that plaintiff cannot recover on the ground of negligence charged in driving at a high and dangerous rate of speed, and that such charge of negligence is withdrawn from your consideration and must not be considered in arriving at your verdict, was erroneous and misleading on the humanitarian doctrine properly submitted. The speed at which defendant was driving, whether an independent ground of negligence or not, was an important element of the humanitarian doctrine and was properly to be considered in that connection. This instruction told the jury not to consider it in arriving at a verdict. Whether plaintiff voluntarily or involuntarily limited her right to recover on the sole ground of negligence covered by the humanitarian rule, defendant was entitled to have the jury so instructed. Yet the withdrawal instruction should not be so worded as to convey the idea that the rate of speed, however high and dangerous, is not even to be considered along with the other evidence in the case. A particular charge of negligence, such as excessive speed, may be properly withdrawn and excluded as a ground or basis of recovery, but that does not mean that the evidence relating thereto may not be considered, if relevant, on the ground of negligence yet in the case. [Yuronis v. Wells, 322 Mo. 1039, 1046, 17 S. W. (2d) 518; Seithel v. St. Louis Dairy Co. (Mo.), 300 S. W. 280; Shumate v. Wells, 320 Mo. 536, 9 S. W. (2d) 632; Althage v. Peoples' Motorbus Co., 320 Mo. 598, 8 S. W. (2d) 924; Schulz v. Smericina, 318 Mo. 486, 498, 1 S. W. (2d) 113.]

The exclusion of the evidence as to excessive speed is, however, in plaintiff's favor on the humanitarian rule of negligence, and if that is the only theory on which the plaintiff goes to the jury, and that be the only error in this instruction, it would not justify the granting of a new trial on that ground.

A patent error, though not stressed here, but which may account for the jury returning a verdict against the weight of the evidence, is found in defendant's given Instruction No. 9. This is an instruction on burden of proof, which tells the jury that plaintiff's charge against defendant is negligence, a positive wrong, which is never presumed; that a recovery can be had only when such charge is sustained by the preponderance, that is, greater weight of the

credible evidence, to the reasonable satisfaction of the jury that the charge is true as laid; that it does not devolve on defendant to disprove the charge, but the charge must be sustained by the preponderance, that is, greater weight of the credible evidence. This instruction so far certainly goes to great length in stressing by repetition and multiplying adjectives the idea of the burden of proof being on plaintiff to prove her case, but might not be objectionable did it not end by saying: "If, therefore, you find the evidence touching the charge of negligence against the defendant to be evenly balanced, or the truth as to the charge of negligence against defendant *remains in doubt in your minds* after fairly considering the evidence, your verdict must be for the defendant." This is telling the jury that if, after fairly considering the evidence, "the truth as to the charge of negligence remains in doubt in your minds," your verdict must be for defendant, and is equivalent to saying that if on the whole evidence there remains a reasonable doubt as to defendant's guilt of negligence, to give him the benefit of the doubt and find for defendant. This is the rule in criminal cases, but not in civil cases. On charges of negligence in a civil case, plaintiff does not have to prove defendant's guilt beyond a reasonable doubt. [State ex rel. v. Ellison, 268 Mo. 239, 249, 187 S. W. 23; Farber v. Boston Ins. Co., 215 Mo. App. 564, 571, 256 S. W. 1079.]

Our attention is called to Shepard v. Schaff (Mo.), 241 S. W. 431, where it is said this court en banc approved an instruction like this one. The instruction in that case is differently constructed and does not end by summing up the whole matter of burden of proof with the statement, "If, therefore, you find the evidence touching the charge of negligence against defendant to be evenly balanced, or the truth as to the charge of negligence against defendant *remains in doubt* in your minds after fairly considering the evidence, your verdict must be for defendant;" and the instruction told the jury in the body of the instruction, following the statement that the jury must be *satisfied* from the evidence that the hand car was defective, dangerous and unsafe, that "if you are in doubt about plaintiff having received his injuries from the cause and in the manner above stated, you should find for defendant," and ending with the statement that "the entire evidence must satisfy you that said hand car was defective, as aforesaid, and that thereby it was derailed and plaintiff injured as aforesaid." This court did not, as claimed, give this instruction its unqualified approval, but held that it was not a sufficiently material error to warrant granting a new trial, saying: "The whole instruction, in connection with the instruction given for plaintiff, must of course, be read together. When so read and so construed, it is clear enough that the jury was simply required to believe or to be 'satisfied from the evidence' that plaintiff was injured from the negligent acts complained of in the petition before he could recover. The

learned counsel for respondent earnestly contends that said instruction required the jury to be satisfied 'beyond or without doubt,' which imposed a greater burden upon plaintiff than imposed by law; but as we read both instructions together considered as a whole, the jury must find for plaintiff if they are 'satisfied' or believe from the evidence that he has proved the facts necessary to make out his case, but if they are 'in doubt,' i. e., 'not satisfied' he has done so, they will find for the defendant. The words 'in doubt' by the instruction itself are defined and interpreted to mean 'not satisfied.' The words 'satisfied' and 'satisfy' being used both before and after 'in doubt' in connection with the same subject-matter in the same instruction emphasize the idea that said words 'in doubt,' as used in the instruction, simply mean the converse of the word 'satisfied,' i. e., 'not satisfied.' ''

This same qualified approval of a similar instruction is found in Hicks v. Vieths (Mo.), 46 S. W. (2d) 604, 607, where this division of the court said: ''The court held that, when the instruction was read as a whole and in connection with other instructions given, it did not operate to impose an undue burden upon plaintiff. Respondents' Instruction 10, to which we have already referred, fully, fairly, and correctly advised the jury of the degree of proof required of plaintiff to establish facts necessary to a recovery. Respondents' Instruction 7 must be read with the other instructions, especially their Instruction 10, and, when this is done, it does not appear that the jury could have been misled and have acted upon the erroneous theory that plaintiff was required to prove his charges of negligence against defendants 'beyond a reasonable doubt.' However, the use of the word 'certainty' in a connection which permits a construction indicating the degree of proof required of a plaintiff should be avoided.''

In Denkman v. Prudential Fixture Co. (Mo.), 289 S. W. 591, an instruction much like the present one was approved in this division, but the chief objection there urged was in the use of the words ''to the satisfaction'' or ''reasonable satisfaction'' of the jury in connection with the burden of proof, as implying proof beyond a reasonable doubt, as condemned in Brooks v. Roberts, 281 Mo. 551, 220 S. W. 11. This criticism was correctly overruled by saying: ''The instruction makes no reference to 'reasonable doubt,' and does not fall within the class of instructions criticised in these opinions. On the contrary, it is of the kind recently approved in Harrison v. Bence (Mo.), 270 S. W. 363, 364, where we said that the words 'reasonable satisfaction,' as there used, 'cannot be said to require any higher degree of proof than the law demands; namely, that made by a preponderance of the evidence.' '' The writer of that opinion then, on the authority of Shepard v. Schaff, supra, merely said that the clause which we are now criticising states no more than ''the converse of

356

the 'reasonable satisfaction' previously charged.'' We think it is likely to be construed as meaning more than that and to imply that plaintiff's proof must be free from doubt.

We are not holding that the trial court, in the light of our previous rulings, should have granted a new trial for error in giving this instruction if no other error appeared, but we do say that the instruction gives defendant all he is entitled to without adding the objectionable clause and that on another trial the instruction should be framed accordingly.

The result is that the judgment of the trial court in granting plaintiff a new trial is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.