Cornelia McCANN, Plaintiff-Respondent,

v.

L. V. BURNS, an Individual, d/b/a The Western Transfer Company, and Luke Wilson, Jr., Defendants-Appellants.

No. 46066.

Supreme Court of Missouri, Division No. 2.

Jan. 13, 1958.

Paul C. Sprinkle, Sprinkle, Knowles & Carter, Kansas City, for appellants.

Ben W. Swofford, Robert A. Schroeder, Laurence R. Smith, Kansas City, Swofford, Schroeder & Shankland, Kansas City, of counsel, for respondent.

BARRETT, Commissioner.

On November 25, 1955, the plaintiff, Mrs. Cornelia McCann, was a guest in her daughter's 1953 Chevrolet convertible and was injured when the automobile was involved in a collision with a tractor-trailer driven by Luke Wilson in the business of his employer, Mr. L. V. Burns. In this action against Burns and Wilson to recover damages for her negligently inflicted injuries a jury by a ten to two vote returned a verdict in favor of the defendants. The trial court, however, sustained the plaintiff's motion for a new trial on the specified assignment that the verdict was "against the weight of the evidence" (V.A.M.S. § 510.330) and the defendants have appealed from the order granting a new trial.

It is contended that the plaintiff, Mrs. McCann, did not make a submissible case of the defendants' negligence, that "the driver of the car in which plaintiff was seated was guilty of negligence," that Mrs. McCann was guilty of contributory negligence and that, therefore, the trial court erred in granting plaintiff a new trial and that this court should reverse the finding of the trial court and order the defendants' verdict reinstated. In so contending defendants' counsel again ignore the fact of the trial court's having granted the plaintiff a new trial and state the facts as though a new trial had been denied. Liddle v. Collins Construction Co., Mo., 283 S.W.2d 474. Although disclaiming, defendants urge upon this court the weight of the evidence and, inferentially, the credibility of the witnesses, as when it is argued that "Neither of them. (the mother or daughter) knew whether they stopped for the night before they reached St. Louis or after they drove through it." Incidentally, the fact was established that it was "after" they drove through St. Louis. Cases are cited without discrimination as to what happened in the trial

court, who was appealing and why; the status of the plaintiff is ignored, in most of the cases relied upon the plaintiff or deceased was a driver of one of the vehicles, not a guest. These cases are not particularly helpful except in so far as they consider some general rule. For example, in Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, a new trial had not been granted, the plaintiff appealed from a judgment in favor of the defendant and it was held that there was evidence to support a finding of contributory negligence on the part of a plaintiff guest. In others the plaintiff or the deceased was a driver of one of the vehicles or responsible for the driver's actions and there were verdicts in favor of the plaintiffs and the defendants appealed, and even those cases were reversed and remanded because the plaintiffs may have had a humanitarian case. Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540; Johnson v. St. Louis Public Service Co., 361 Mo. 844, 237 S.W.2d 136.

■ Upon this appeal, the trial court having granted the plaintiff guest a new trial on the broad discretionary ground that the verdict in favor of the defendants was against the weight of the evidence, we are concerned here, not with the weight and credibility of the evidence and the possible conflicting inferences, but with whether there was sufficient evidence to sustain a verdict in favor of the plaintiff if the jury had returned a verdict in her favor. Dawson v. Scherff, Mo., 281 S.W. 2d 825; Moore v. Southwestern Bell Telephone Co., Mo., 301 S.W.2d 817; Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410. In Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, there were two plaintiffs, at least one of whom was a guest, suing for their own personal injuries and for the death of another and there were two defendants, the driver of the automobile in which the plaintiffs and deceased were riding and the driver of the automobile with which their host collided. To sustain their action the plaintiffs called as their witnesses the drivers of the two automobiles and each driver testified that the other swerved to the wrong side of the road. There was a jury verdict for the defendants. The trial court granted the plaintiffs a new trial on the ground that the verdict was against the weight of the evidence. Upon the defendants' appeal it was held that the plaintiffs were not conclusively bound by that part of their witnesses' testimony contradicted by other evidence and that it was proper to submit the two supported, alternative theories of liability. It was also held that there was evidence tending to show negligence on the part of both defendants and, consequently, a reasonable basis for the trial court's granting plaintiffs a new trial on the specified ground and, with greater force, that it could not be said that the trial court had abused its discretion.

The automobile and tractor-trailer collided within sight of the Linkville community in Platte County on paved U. S. Highway 71 By-Pass, near the highway's intersection with Route "W." At this particular point Highway 71 is an east and west road, and Route "W" is a north and south road. Mrs. McCann, with her granddaughter asleep in the back seat, and her daughter, Lorraine Salmon, driving, was traveling west on 71. Luke Wilson had picked up a trailer loaded with corn at Waldron, west of Linkville and Highway 71. He was to deliver the corn to Mr. Burns' farm six miles northeast of Nashua, two and one half miles north of 71 By-Pass. As Luke approached Highway 71, about midday, he stopped his tractor-trailer on Route "W" headed north, the last time in the middle of the road and six or eight feet from the paved highway. He looked to the east and to the west and saw no vehicles approaching from either direction. He intended to turn to his right and travel east on Highway 71.

He claimed that there was a ditch to his right and so that his trailer would not hit the ditch he "made a long swing so I could

swing out. * * * Had to swing out in order to miss that (ditch)." He had "almost" made a complete turn when "up pops a car over the hill," from the east. At that time he said, in describing the position of his tractor-trailer, "The tractor was completely on the pavement plus the back wheel of the left side of the trailer while I was making the turn. Q. (By his counsel) Where was it with reference to the middle line of the pavement? A. Well, I believe I was just about on that middle line, I guess. Q. What was on the middle line, what part of your outfit? A. Left wheel." As to what part of his "outfit" was north of the center line of the pavement he said, "The left side. Well, just nothing but the fender sticking over a little." To a highway patrolman he said, "I just pulled out as she came up over the hill." It is 373 feet east from Route "W" to the crest of a hill on 71 By-Pass. Mrs. Salmon had been driving at an average speed of about fifty miles an hour, there had been snow flurries but she had not encountered snow or ice on the highway. As she approached the crest of the hill she reduced the speed of the Chevrolet to forty or forty-five miles an hour. She could see the tractor-trailer stopped to the left of the highway and further slackened her speed, watching the tractor-trailer. The tractor-trailer came out onto the highway "real slow" in a northeast direction "making an arc" over the center line of the highway. "Its actions were confusing." She applied her brakes but there was ice or packed snow on the hill and she lost control of the car and skidded to the left on the south part of the highway, the left front and side of the Chevrolet striking the left side and bumper of the tractor.

Mrs. McCoy, who with her husband operated the feed store at Linkville, Mr. Carey, who was at the store, and Mr. Shores, who was in the store, all saw the collision. In addition to the highway patrolman, Mr. Kuykendall and Mr. Morris, who lived nearby, saw the tractor-trailer

on the highway with "the front end of the truck, the front axle, at least, was over the line, in fact, the center line split the axle in the middle." To select only one of the eye-witness accounts, Mr. Carey, who was buying gasoline in front of the store, described the collision in this manner: He saw the truck stop on "W," headed north and then proceed forward onto 71. "He stopped and then he made a turn, came around * * * going east. * * * The biggest part of the trailer got over (on the north side of the pavement). * * * The tractor—he had to make the turn, because that is a square corner, his tractor pulled around and the trailer got clear over on, the biggest part of it on the north side of 71 By-Pass. * * * The biggest part of the front end of the trailer was on the north side of the slab. * * * Very little of the north portion of the slab that wasn't covered when he was making the turn." Mr. Carey saw the Chevrolet come over the hill as it traveled west at an approximate speed of 30 to 35 miles an hour, he could see that the driver had applied the brakes "and she hit a little ice and that made her kind of zigzag there" and the car skidded. According to Mr. Carey, as the Chevrolet came over the crest of the hill, "the front end of his trailer was way over half, on the middle of the black line." When the Chevrolet started skidding, he said of the driver of the tractor-trailer, "Well, he tried to pull on the south side of 71 By-Pass" and succeeded in getting his tractor on the south side "but his trailer left about half and half straddled of the black line," and the automobile slid into the left front of the tractor. When Mr. Carey got down to the vehicles Luke said, "I couldn't make this turn and get back on my side of the highway."

■ Thus it is obvious, in this view of the circumstances, that Luke did not drive his tractor-trailer "upon the right half of the roadway" (V.A.M.S. § 304.015 (2), Laws Mo.1953, p. 587), his conduct did not come within any of the specified

exceptions in the rules of the road, and in making a right turn a jury could reasonably find that he did not observe the rule; "Both the approach for a right turn and while making a right turn, shall be made from that portion of the roadway as close as practicable to the right-hand curb or edge of the highway." V.A.M.S. § 304.018, subd. 1(1). We need not say, as the respondent urges, whether Luke was guilty of negligence as a matter of law, and we need not consider, as the appellants urge, whether Mrs. Salmon's conduct was the "sole cause" of the collision or whether they were entitled to invoke the doctrine at all. Neither is it necessary to set forth and examine the rules governing Mrs. McCann's conduct as a guest. But see Ketcham v. Thomas, Mo., 283 S.W.2d 642. From this brief recital of the facts of this rather typical, elemental motor vehicle collision the inferences of the appellants' negligence, proximate cause, the plaintiff's freedom from negligence, and sole cause of Mrs. Salmon if an element properly in the case, are all so self-evident as not to require detailed analysis and point by point demonstration. Erxleben v. Kaster, Mo.App., 21 S.W.2d 195; Leek v. Dillard, Mo.App., 304 S.W.2d 60; Dawson v. Scherff, supra; Wines v. Goodyear Tire & Rubber Co., Mo.App., 246 S.W.2d 525; Wood v. St. Louis Public Service Co., Mo., 228 S.W. 2d 665. The trial court did not abuse its discretion in sustaining plaintiff's motion for a new trial on the ground that the verdict was against the weight of the evidence and, accordingly, the judgment is affirmed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.