**Archie WILLIAMS and Foil Watkins d/b/a Louisburg Farm Supply, Plaintiffs-Respondents,**

**v.**

**Norman CASS and Betty E. Cass, Defendants-Appellants.**

No. 8199.

Springfield Court of Appeals.

Missouri.

Oct. 24, 1963.

Lilley & Cowan, Springfield, for defendants-appellants.

Theo. G. Scott, Buffalo, for plaintiffs-respondents.

STONE, Judge.

For materials alleged to have been furnished for erection of a dwelling house, plaintiffs, Archie Williams and Foil Watkins doing business as Louisburg Farm Supply, sought a personal judgment for $3,292.72 with interest against defendants, Norman Cass and Betty E. Cass, husband and wife, and a lien therefor upon their 320-acre tract on which the dwelling house was situate. Defendants' motion for a directed verdict at the close of the evidence having been overruled, the jury returned a general verdict for defendants upon which judgment was entered. Thereafter, plaintiffs' motion for new trial was sustained upon the sole ground that the verdict and judgment were against the weight of the evidence. On this appeal by defendants, the primary contention is that the trial court erred in granting a new trial because (a) plaintiffs' petition did not state a cause of action and (b) plaintiffs' evidence was insufficient to make a submissible case in that (1) there was no showing that the materials were purchased "by defendants or their agent" and (2) there

was "a total failure of proof as to the reasonable value of the merchandise involved."

■ Some preliminary references to relevant legal principles may be helpful. As instant plaintiffs emphasize, a trial court is invested with broad inherent discretion to grant one new trial upon the ground that the verdict is against the weight of the evidence.[1] But that discretion is to be exercised judicially, not arbitrarily;[2] and repeated pronouncements have made it crystal clear that the test as to whether there has been an arbitrary exercise of such inherent discretion is whether there was substantial evidence to have supported a verdict for the party or parties to whom the new trial was granted.[3] Thus, the legal question on an appeal by defendants from an order granting a new trial to plaintiffs on the ground that the verdict was against the weight of the evidence is the same legal question as that theretofore presented to the trial court by defendants' motion for a directed verdict at the close of the evidence.[4] ". . . (P)laintiff has no right to a new trial when the evidence in her favor is not sufficient to take the case to the jury. . . . A failure of evidence to support a verdict for plaintiff renders a case dead, and it cannot be resurrected by a motion for new trial." Payne v. Reed, 332 Mo. 343, 347, 59 S.W.2d 43, 44(3); Rose v. Thompson, 346 Mo. 395,

401, 141 S.W.2d 824, 828. "To grant a new trial, on the ground that the finding was against the weight of the evidence, would be arbitrary if there was no evidence to weigh. Therefore, on appeal from such an order based on that ground, the appellate court will determine whether or not there was sufficient substantial evidence to sustain a verdict for the party to whom the new trial was granted." Castorina v. Herrmann, 340 Mo. 1026, 1032, 104 S.W.2d 297, 300(15, 16); Rose, supra, 346 Mo. loc. cit. 401, 141 S.W.2d loc. cit. 828. See also Kiburz v. Loc-Wood Boat & Motors, Inc., Mo., 356 S.W.2d 882, 884 (2).

In the Fall of 1960, Norman E. Cass (hereinafter referred to as defendant Norman), "a preacher of the gospel" and farmer, had several discussions with one Samuel M. Martin, self-described upon trial as "a carpenter," about construction of a dwelling house on a 320-acre tract in Polk County, Missouri, owned by defendant Norman and his wife, Betty E. Cass (hereinafter referred to as defendant Betty). As a result of those discussions, Martin entered upon construction of the house on December 29, 1960, and thereafter pursued this project until the house was completed about August 1, 1961. Martin admittedly drew, and his daughter typed, a construction contract (hereinafter referred to as the written contract) dated December 29, 1960, but actually prepared and signed

1. Frager v. Glick, Mo., 347 S.W.2d 385, 387(1); State ex rel. State Highway Com'n. v. Belvidere Development Co., Mo., 315 S.W.2d 781, 784(7); Dawson v. Scherff, Mo., 281 S.W.2d 825, 831(6); Rule 78.01, V.A.M.R.; V.A.M.S. § 510.-330.

2. Madsen v. Lawrence, Mo., 366 S.W.2d 413, 416(5); Burr v. Singh, 362 Mo. 692, 699, 243 S.W.2d 295, 300; Graves v. Atchison, T. & S. F. Ry. Co., 360 Mo. 167, 169, 227 S.W.2d 660(1); Happy v. Walz, 358 Mo. 56, 59, 213 S.W.2d 410, 412 (1).

3. Madsen, supra, 366 S.W.2d loc. cit. 416; Carter v. Matthey Laundry & Dry Cleaning Co., Mo., 330 S.W.2d 771, 775(2);

Berry v. Harmon, Mo., 323 S.W.2d 691, 693; McCann v. Burns, Mo., 308 S.W. 2d 631, 633(1); Andres v. Brown, Mo., 300 S.W.2d 800, 801(2); Hendershot v. Minich, Mo., 297 S.W.2d 403, 411(22); Whalen v. St. Louis Public Service Co., Mo.App., 351 S.W.2d 788, 793; Lomax v. Sawtell, Mo.App., 286 S.W.2d 40, 42(3), and cases there cited.

4. Payne v. Reed, 332 Mo. 343, 347, 59 S.W.2d 43, 44(3); Lindsey v. Vance, 337 Mo. 1111, 1114, 88 S.W.2d 150, 151; Rose v. Thompson, 346 Mo. 395, 141 S.W. 2d 824, 828; Rosenblum v. St. Louis Public Service Co., Mo.App., 242 S.W.2d 304, 305(1); Hoefel v. Hammel, Mo.App., 228 S.W.2d 402, 407(5).

about February 1, 1961. The written contract, reflecting all of the legal frailties of a layman's "do-it-yourself" document, named defendant Norman as "owner" and Martin as "builder," identified three attached drawings as "a part of and the basis of this agreement," sketched the specifications in bare outline, and closed with the blunt statement "Total cost not to exceed $12,500." The written contract contained no provision concerning the ordering of or payment for materials to be used in construction. There was no reference to defendant Betty in the written contract and she did not sign it.

Defendant Norman testified that the written contract "actually covers the entire building of the house"; that he regarded it as obligating him to pay $12,500 to Martin; and that, to the date of trial (September 24, 1962), he had paid to, or for the use and benefit of, Martin the aggregate sum of $12,901.63 and still had not settled for certain "extras." According to Martin, his initial employment was under an oral agreement which he stated as "they wanted me to build them a house" —"they had the plans on it"—"he said he wanted me to buy the materials and take care of all that stuff, because he wouldn't have time to fool with it." Martin said, and defendant Norman agreed, that the latter desired and needed the written contract for use in connection with a loan application; but, regardless of what motivated preparation of the written contract, Martin confirmed the statement of counsel that it "set forth the deal."

Before contracting with Martin, defendant Norman had showed him a cost estimate of needed materials which a Springfield lumber yard had prepared. Martin, who had been a customer of plaintiffs since they had begun business some eight years previously, thought that Louisburg Farm Supply (plaintiffs) would give "a better deal" on materials. Martin's testimony was that defendant Norman responded, "Get it where we can get the best deal," which Martin regarded as "permission"

from both defendants to purchase the materials from plaintiffs. The recollection of defendant Norman was that "I told him (Martin) that it didn't matter to me, wherever he bought the material." In any event, Martin contacted plaintiffs and thereafter, during the period from January 6 to August 1, 1960, ordered numerous bills of materials. Although two-thirds of the seventy-two original tickets or invoices were billed to "Norman Cass—Sam Martin job" or to "Norman Cass," ten of the tickets were billed otherwise (e. g., to "Sam Martin," to "Martin & Cass," or to "Cass & Martin") and eight of them were billed to no one. No ticket bore the name of defendant Betty.

During the construction period, defendants had been in plaintiffs' place of business (so defendant Norman said) on two occasions, to wit, during January and June 1961, or (so plaintiff Watkins stated) "several times." Plaintiff Watkins' testimony concerning defendants' first call (on a date not fixed more specifically than that it was after deliveries of materials to the construction site had commenced) was that defendants "came in to pick out some material," introduced themselves, "said that they were the ones that Sam Martin *were* building this house for and . . . that Sam would be paying the bills, . . . asked if he was keeping paid up, which *it* was at the time, and . . . said they wanted it kept paid up close as they went along." It may be observed parenthetically that plaintiffs' original tickets or invoices show that, after deliveries to the construction site commenced, this account never was "paid up" or "paid up close," the running balances on account (after crediting payments) carried forward on the original tickets having been $737.90 at the end of January 1961, $1,208.77 at the end of February, $2,009.26 at the end of March, $3,990.62 at the end of April, $1,758.02 at the end of May, $2,441.48 at the end of June, and $3,079.50 at the end of July.

Plaintiff Watkins further stated that, when defendants subsequently came to plaintiffs' place of business during the construction period, "they merely came in to pick out the type and quality of material that was being used" and "said that Mr. Martin would order out the amount they needed." Defendant Norman conceded that, when he went to plaintiffs' place of business to select materials, he was interested in their price and "did not want the house to exceed the $12,500." From time to time during the construction period, defendant Norman paid "rather substantial sums" to Martin, and the undisputed evidence, as developed in plaintiffs' case, was that all of the payments (which aggregated $4,500) upon the account in suit were made by Martin's personal checks and that he also "paid all hands." "Along toward the last" plaintiff Watkins made an unfruitful demand upon Martin to pay the materials account.

No copies of tickets or statements of account were mailed or delivered to defendants during the construction period; but, in response to their request, defendants were given copies of the tickets when they went to plaintiffs' place of business in August 1961, after the house had been completed and after Martin had told defendant Norman that he (Norman) "still owed $3,200" to plaintiffs. Plaintiff Watkins' version of what had occurred on this August visit by defendants was that "they . . . said that they understood they owed for some material there and wanted to know how much it was . . . that it run more than they expected it to but they had realized that they had used some more expensive material throughout the house than they intended to . . . and they couldn't pay it all now, but would pay what they could and as soon as he sold some cattle he would pay the rest of it," that defendant Norman "started to write me a check for something," but that defendant Betty said "let's don't pay him anything now; let's wait and see what we can get out of Sam Martin . . . .."

Defendant Norman agreed that he had taken his check book out of his pocket and explained that he had done so to write a check for $6.58 in payment for three small items purchased at that time. Plaintiffs' ticket for those items and defendant Norman's cancelled check were in evidence. Defendant Betty did not testify upon trial.

■  Under § 429.010, one who furnishes material "for any building, erection or improvements upon land . . . under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, upon complying with the provisions of sections 429.-010 to 429.340, shall have . . . a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, *to the extent of one acre . . . .*" (All statutory references are to RSMo 1959, V.A.M.S., and all emphasis herein is ours.) In their lien claim filed with the circuit clerk [§ 429.080] and in their petition instituting this action [§ 429.-170], plaintiffs referred to the land on which the dwelling house was constructed and a lien was sought as "All of the East Half of Section (10), Township (33), Range (21)" in Polk County, Missouri; and the record reflects no effort to survey, locate, define or describe a tract no larger than one acre. Therefore, upon trial plaintiffs could not have been entitled to a judgment impressing a lien. § 429.010; Hertel Electric Co. v. Gabriel, Mo.App., 292 S.W.2d 95, 99–100. But since, as plaintiffs here point out, they might have been entitled to a personal judgment against defendants, even though their lien failed [Williams v. Porter, 51 Mo. 441, 442(2); Volz et al., Missouri Practice, Vol. 1, § 1242, p. 591; 36 Am.Jur., Mechanics' Liens, § 284, p. 172], our further inquiry will be whether there was substantial evidence to have supported a verdict for a money judgment against defendants.

■■  From the record as a whole and their brief on appeal, it is plain that plain-

tiffs' theory is that defendants, *acting by and through Martin as their agent*, contracted for the materials. And indeed owners may contract for materials through an agent [Hydraulic Press Brick Co. v. R. B. Winn Contracting Co., Mo.App., 219 S.W. 681, 682(4)]; and, where that is done, the materialman may look directly to such owners for compensation and, in a suit to establish a lien therefor, it is not necessary to join the agent as a party. Spitcaufsky v. Guignon, Mo., 321 S.W.2d 481, 493(15). On the other hand, defendants insist that Martin did *not* act as their *agent*, but that his status was that of a *contractor* who acted in his own behalf. It would appear to be doubtful whether plaintiffs made a submissible case, *particularly as against defendant Betty*, on their theory that the materials were ordered by Martin as *agent* for defendants; but, since plaintiffs' evidence was, in another respect, patently insufficient to have supported a verdict for them, we find it unnecessary to develop further factual details or to determine whether the issue of Martin's agency vel non was submissible.

■ As their only verdict-directing instruction demonstrated and as their counsel specifically confirms on this appeal, plaintiffs sought to recover on quantum meruit. "Quantum meruit means 'as much as he has deserved,' and the burden is on the claimant to plead, prove, and have the jury instructed, that his charges are fair and reasonable." Adams v. Smith, Mo.App., 307 S.W.2d 525, 527(1); Rodgers v. Levy, Mo.App., 199 S.W.2d 79, 82(8). See also Fitzgerald v. Schaefer, Mo.App., 216 S.W.2d 939(3). Bluntly put, the failure to prove the reasonable value of services rendered or materials furnished is fatal to recovery therefor in quantum meruit. Hutchinson v. Swope, Mo.App., 256 S.W. 134, 135(4); Knoch v. Frye, Mo.App., 363 S.W.2d 737, 741(5). To the same effect, see Wilson v. Berning, Mo. App., 293 S.W.2d 151, 155(7); Cheek v. National Life Ins. Co. of U. S. A., 200

Mo.App. 533, 207 S.W. 882(2); Gillen v. Haley, 185 Mo.App. 23, 171 S.W. 638.

■ In the case at bar, twenty-one typewritten pages of the transcript were required to list the multitude of items included in plaintiffs' claim. Many of those items were described imperfectly or incompletely, and several of the original tickets or invoices reflected unexplained lump sum charges embracing several different items. We note also that the final balance on account shown on the last ticket or invoice was $3,079.50, whereas $3,292.72 was the principal amount for which plaintiffs sought judgment without explanation as to the obvious discrepancy. Certainly it could not be said that the reasonable value of these materials was a matter of common knowledge which the triers of the facts might have determined without the aid of evidence. Contrast Allmon v. Allmon, Mo.App., 314 S.W.2d 457, 462–463 (8); In re Hartle's Estate, Mo.App., 236 S.W.2d 40, 41(1). However, plaintiffs' petition contained no averment with respect to the reasonableness of their charges; and, more importantly, there was not a scintilla of evidence as to the reasonable value of the materials furnished or even that plaintiffs' charges therefor were fair and reasonable.

Apparently recognizing the legal insufficiency of their petition and their proof, plaintiffs close with the plea that, "in furtherance of justice," the order granting a new trial should be affirmed because, if afforded another opportunity, they could (so they state) make a submissible case. But this is *not* a case (such as most of those cited by instant plaintiffs, e. g., Byrne v. Prudential Ins. Co. of America, Mo., 88 S.W.2d 344; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889; Feinstein v. McGuire, Mo., 297 S.W.2d 513) in which our discretionary power to remand is invoked upon *defendants' appeal from a judgment for plaintiffs*, or in which another trial is sought to afford to plaintiffs, *who*

*misconceived from the outset the applicability of the theory chosen by them,* an opportunity to plead and follow an appropriate theory. E. g., O'Neal v. Mavrakos Candy Co., 364 Mo. 467, 263 S.W.2d 430, 432(6); Id., Mo.App., 255 S.W.2d 138, 142 (6); Houfburg v. Kansas City Stock Yards Co. of Maine, Mo., 283 S.W.2d 539, 546–548(15–17). And this is *not* a case in which *plaintiffs* were able to obtain a favorable verdict and judgment *in the first instance,* as in Prince v. Bennett, Mo., 322 S.W.2d 886, also cited in plaintiffs' brief. In arguing this point, instant plaintiffs lose sight of the fact that *defendants* were victorious upon trial, and that, in our appellate consideration of whether the trial court erred in setting aside the judgment for *defendants* and thus depriving them of the fruits of their victory on the sole ground that the verdict and judgment were against the weight of the evidence, the determinative test is whether there was substantial evidence to have supported a verdict for plaintiffs and the legal question for our resolution thus becomes the same as that presented to the trial court by defendants' motion for a directed verdict at the close of the evidence. See again cases cited in footnotes 3 and 4 and in accompanying text.

In the circumstances hereinbefore outlined, it is manifest that defendants' motion for a directed verdict at the close of the evidence should have been sustained and that we cannot say that there was substantial evidence to have supported a verdict for plaintiffs. That being true, nothing in the record persuades us that we nevertheless should brush aside the applicable legal principles and, in the exercise of such judicial discretion as we may have in this area, should approve the order granting a new trial and remand the case that plaintiffs might have another opportunity to seek a favorable verdict at the hands of a different jury.

Accordingly, the order granting a new trial to plaintiffs is set aside and the cause is remanded with directions to reinstate the verdict and judgment for defendants.

RUARK, P. J., and HOGAN, J., concur.