O. H. BYBEE, Plaintiff-Appellant,

v.

Fred DIXON and Jennie Dixon,
Defendants-Respondents.

No. 8257.

Springfield Court of Appeals.

Missouri.

June 18, 1964.

Max H. Glover, Webb City, for plaintiff-appellant.

Myers & Birk, Webb City, for defendants-respondents.

STONE, Judge.

For materials alleged to have been purchased and work alleged to have been done in connection with the remodeling of a dwelling house, plaintiff O. H. Bybee sought a personal judgment for $1,164.93 with interest against defendants, Fred Dixon and Jennie Dixon, husband and wife, and a lien therefor upon "one square acre" on which the house was situate. Defendants' counterclaim prayed damages of $10,000 for breach of an alleged oral contract by which (so it was alleged) plaintiff "agreed to furnish all labor and substantially all the materials" for the remodeling at a cost "of not more than $6,500." Trial by the court sitting as a jury resulted in judgment for defendants on plaintiff's petition and judgment for plaintiff on defendants' counterclaim. This appeal is by plaintiff from the adverse judgment on his petition. Since defendants did not appeal, we are not concerned with the judgment on the counterclaim. Wilson v. Motors Insurance Corp., Mo.App., 349 S.W.2d 250, 251.

The two-story frame dwelling house under discussion (hereinafter referred to as the house) was located on a twenty-acre tract inherited by defendant Jennie Dixon (hereinafter referred to as defendant Jennie) in 1959 or 1960. During the Summer of 1960, defendants talked with plaintiff, a carpenter for thirty years, about remodeling the house. At first, defendants wanted to take off the old roof and the second story, thus converting the house into a one-story structure. Later, they decided to remodel, but not remove, the second story. On the ground level, the major items were to be a new bedroom, utility room and two-car garage, a new brick fireplace in the living-room, added closets, new windows, floors and kitchen cabinets, and complete rewiring. These discussions resulted in defendants' employment of plaintiff to do the contemplated remodeling. Two other carpenters, Holden and Tandy by name, who had worked for plaintiff on other jobs, were to assist on this one, but plaintiff was to be "in charge on the job." At the end of each week, plaintiff, Holden and Tandy were to be paid by the hour (*at wage rates not shown in evidence*) for work done during that week. With respect to materials for the project, plaintiff testified that defendant

Jennie "requested we get everything and store it in the barn * * * to have it ready to use when we got to it," but the record discloses no agreement as to whether the suppliers should charge such materials to plaintiff or to defendants.

Defendant Jennie testified that, prior to entering upon the remodeling, plaintiff had assured her that the entire project "would not cost over $6,000 or $6,500." Plaintiff conceded that his "first figures estimate" had been "about $5,000," but he said that neither this nor any other total cost figure had been given to defendant Jennie because she had made changes in the project "before my [plaintiff's] figures were turned in." In fact, plaintiff insisted that at the outset defendant Jennie was interested only in "how much * * * it took to last until about the first of the year [1961]" when some funds would be distributed to her from an estate in probate, and that he estimated this interim monetary requirement at $1,500. In any event, there was no oral agreement upon a definite total cost figure, and there was no written contract covering any phase of the project.

Holden and Tandy began work on the project during the latter part of September 1960. Plaintiff himself moved to the project a short time later after finishing another job. Work proceeded until the latter part of March 1961, when defendants ran out of funds and (in plaintiff's words) defendant Jennie "laid us off." "She was supposed to tell us when she got the loan to proceed with the work, and then I checked * * * once or twice to see if they had gotten the loan, and they had not, and so * * * it just died down that way, and I [plaintiff] never did hear any more." When plaintiff, Holden and Tandy were laid off, the project was (to adopt plaintiff's estimate) "a little over half completed." At that time, defendants already had expended on the project approximately $4,000 for labor and $4,800 for materials. Of the $4,800 for materials, $4,180.61 had been paid to Carl Junction

Lumber Company which plaintiff said "belonged to me."

Plaintiff's lien account included (a) a multitude of bathroom and plumbing items (covering four pages of the transcript) furnished by Joplin Supply Company on twelve different dates from November 1, 1960, to February 22, 1961, billed by Joplin Supply to plaintiff for the aggregate sum of $730.89, and in the lien account rebilled by plaintiff to defendants for the aggregate sum of $924.18, (b) formica furnished by H & H Manufacturing Company on November 29 and December 6, 1960, and March 10, 1961, billed by H & H to plaintiff for the aggregate sum of $66.75, and in the lien account rebilled by plaintiff to defendants for the aggregate sum of $86.77, (c) a pilot burner for a hot water tank furnished by Nance Hardware Company on January 16, 1961, billed by Nance to plaintiff at $3.06, and in the lien account rebilled by plaintiff to defendants at 3.98, (d) "bricks" (quantity, quality and size not given) furnished by Carl Junction Lumber Company to plaintiff on a date and at a price not shown, and in the lien account rebilled by plaintiff to defendants at $55, and (e) "labor" (for "about 46 hours," so plaintiff stated upon trial) billed in the lien account at $95. Both defendants testified that plaintiff had assured them that they were to have all materials at his (plaintiff's) cost; but, denying that, plaintiff's explanation of the prices at which materials were charged in the lien account was that "I get 25 per cent [additional] which is regular retail price * * * plus 5 per cent for installing it."

Finding that "a material portion of the work done by the plaintiff was not done in a good and workmanlike manner" and that "not all the materials in the lien statement were used in the defendants' house," the trial court entered judgment for defendants on plaintiff's petition. Both of the quoted findings were supported by substantial evidence. Defendants' witness Allmendinger, an experienced residential contractor who

had inspected the house after plaintiff, Holden and Tandy had been laid off, summed up his detailed testimony concerning specific items by stating that the quality of workmanship in the remodeling project had been very poor, that it was "all poorly constructed," and that he had seen nothing which was "skillfully done, good workmanship." Plaintiff himself conceded that most of the bathroom and plumbing items furnished by Joplin Supply Company, which (as we have noted) accounted for $924.18 of the $1,164.93 billed in the lien account, had not been actually used before he and his fellow-workmen had been laid off, and he likewise admitted that he had no personal knowledge as to whether those items had been incorporated into the house later.

■■■ The sole point on appeal complaining of refusal to grant a lien is that the trial court erred in such refusal "because only a small portion of the lien claim was for labor, the principal amount being for materials furnished; and when the defendants refused to allow the plaintiff to proceed to install materials on the job such action on the part of the defendants estops them from denying plaintiff a lien for the same." No such theory of estoppel was pleaded either in plaintiff's petition or in his reply, and no such point was included in plaintiff's motion for new trial. With respect to *pleading*, nothing is suggested which would render inapplicable the general rule that estoppel must be pleaded.[1] As for *preservation of the quoted point*, it is a

fundamental and time-honored principle of appellate procedure that a trial court must be afforded an opportunity to review and correct its own errors before the aid of an appellate court may be invoked.[2] Thus, the plain requirement of V.A.M.R. Rule 79.03 [see V.A.M.S. § 512.160(1)] that "[a]llegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for new trial" is held to be mandatory [Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 609; Gosnell v. Gosnell, Mo.App., 329 S.W.2d 230, 234(5); C & O Distributing Co. v. Milner Hotels, Mo.App., 305 S.W.2d 737, 738(1)]; and, excepting only those questions particularized and enumerated in Rule 79.03 (none of which is applicable to the quoted point under discussion), a party is precluded from urging on a civil appeal any allegation of error not presented to the trial court in a motion for new trial.[3] Since the quoted point was not raised or presented in the trial court, it has not been preserved for our consideration.

■■■ We have not overlooked plaintiff's argument (not presented or embodied in "points relied on," as required by V.A.M.R. Rule 83.05 [e]), which runs along the line that the remodeling project was abandoned "by the fault" of defendants [36 Am.Jur., Mechanics' Liens, § 72, loc. cit. 61] and that, therefore, plaintiff was entitled to a lien for the materials left on defendants' premises which would have been used in the remodeling project if plaintiff, Holden and

---

1. McLain v. Mercantile Trust Co., 292 Mo. 114, 122, 237 S.W. 506, 508(2); E. C. Robinson Lumber Co. v. Lowrey, Mo. App., 276 S.W.2d 636, 641–642(9); Goodwin & McDowell Motor Co. v. St. Clair Auto. Finance Co., Mo.App., 253 S.W.2d 543, 545; Wilder National Tavern System, Inc. v. Wilder, Mo.App., 18 S.W.2d 114, 115(3); Berkshire v. Holcker, 202 Mo.App. 433, 444, 216 S.W. 556, 561(11); Marshall v. Hall, Mo.App., 200 S.W. 770, 776(12).

2. State ex rel. Morton v. Cave, 359 Mo. 72, 79, 220 S.W.2d 45, 49(4); Brown v. Thomas, Mo.App., 316 S.W.2d 234, 236

(3); Gover v. Cleveland, Mo.App., 299 S.W.2d 239, 243(12); Grapette Co. v. Grapette Bottling Co., Mo.App., 286 S.W. 2d 34, 37(3); Fruit Supply Co. v. Chicago, B. & Q. R. Co., Mo.App., 119 S.W. 2d 1010, 1011(4).

3. Mayor v. Mayor, Mo., 349 S.W.2d 60, 62–63(2); State ex rel. State Highway Com'n. v. Dockery, Mo., 340 S.W.2d 689, 695(8); Robbins v. Robbins, Mo., 328 S.W.2d 552, 555(4, 5); Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 609(10, 11); Illinois State Bank of Quincy v. Pedersen, Mo.App., 350 S.W.2d 102, 110(8).

Tandy had completed it.. See Carroll Contracting Co. v. Newsome, 201 Mo.App. 117, 210 S.W. 114, 118(7). But we need not determine whether the remodeling project was abandoned by defendants' "fault" or, if so, whether that would take the instant case without the holding in Davidson v. Fisher, Mo.App., 258 S.W.2d 297, 301(3, 5), that a materialman is entitled to a lien only for those materials which actually enter into the construction.[4] For, on the record before us, plaintiff was not and is not entitled to recover anyway, because of a fatal failure of proof as to the reasonable value of the materials alleged to have been furnished. Williams v. Cass, Mo.App., 372 S.W.2d 156, 161, and cases there cited.

 Plaintiff's other point is that, even though he was denied a lien, he should have been granted a personal judgment against defendants. With plaintiff vigorously denying the existence of an express contract and earnestly contending that, if the judgment for defendants is affirmed, there will be "an unjust enrichment on the part of the defendants," plaintiff's theory of recovery obviously is that of *quantum meruit*, i. e., that of an obligation "founded upon the fundamental principle that no one ought 'to enrich himself unjustly at the expense of another'" [Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 787(8); Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 1132, 219 S.W.2d 333, 338(4–6), 8 A.L.R.2d 710; Donovan v. Kansas City, 352 Mo. 430, 448, 175 S.W.2d 874, 884(17), 179 S.W.2d 108, appeal dismissed 322 U.S. 707, 64 S.Ct. 1049, 88 L.Ed. 1551] or, as otherwise stated, to recover "'as much as he has deserved.'" Hoyt v. Buder, 318 Mo. 1155, 1168, 6 S.W. 2d 947, 951; Rodgers v. Levy, Mo.App., 199 S.W.2d 79, 82(8); Adams v. Smith, Mo. App., 307 S.W.2d 525, 527(1). Indeed, where one at the request of the owner renders services or furnishes materials in connection with construction or repairing, with-

out an express agreement as to payment, the promise implied by the law is that the owner will pay the reasonable value of such services or materials. American Displays v. E. T. Swiney Motors, Mo.App., 240 S.W. 2d 732, 735(4); Roper v. Clanton, Mo.App., 258 S.W.2d 283, 287(3); 17 C.J.S. Contracts § 4c, p. 564.

 Instant plaintiff contented himself with showing that he had purchased for intended use in the remodeling project the materials listed in the lien account, that such materials had been charged to him at the prices shown on the suppliers' statements, and that the suppliers were looking to him for payment. (To the time of trial, plaintiff's only payment on these accounts had been $3.06 to Nance Hardware Company.) But there was not a scintilla of evidence that plaintiff's charges in the lien account were fair and reasonable, or for that matter that the charges in the suppliers' statements (to which plaintiff added 25 per cent and then 5 per cent) were fair and reasonable. And certainly it could not be said that the reasonable value of the multitude of items listed in the lien account was a matter of common knowledge which the trier of the facts might have determined without the aid of evidence. Williams v. Cass, supra, 372 S.W.2d loc. cit. 161. Contrast Allmon v. Allmon, Mo.App., 314 S.W.2d 457, 462–463(8).

 The burden rested on plaintiff to plead and prove that his charges were fair and reasonable [Adams v. Smith, Mo. App., 307 S.W.2d 525, 527(1); Fitzgerald v. Schaefer, Mo.App., 216 S.W.2d 939(3); Rodgers v. Levy, supra, 199 S.W.2d loc. cit. 82(8)] and his failure to prove the reasonable value of materials alleged to have been furnished and services alleged to have been rendered was fatal to his recovery in quantum meruit. Williams v. Cass, supra, 372

4. In this connection, see the discussion concerning Missouri cases in annotation 39 A.L.R.2d 394, 440–441, dealing with "Delivery of material to building site as sustaining mechanic's lien."

S.W.2d loc. cit. 161; Knoch v. Frye, Mo. App., 363 S.W.2d 737, 741(5); Hutchinson v. Swope, Mo.App., 256 S.W. 134, 135(4). See Wilson v. Berning, Mo.App., 293 S.W. 2d 151, 155(7); Cheek v. National Life Ins. Co. of U. S. A., 200 Mo.App. 533, 207 S.W. 882(2); Gillen v. Haley, 185 Mo.App. 23, 171 S.W. 638. The foregoing being dispositive of plaintiff's appeal, it becomes unnecessary to discuss other considerations which would dictate the same end result.

The judgment for defendants is affirmed.

RUARK, P. J., and HOGAN, J., concur.